## TENNYSON v. GREEN.

### No. 5929.

Court of Civil Appeals of Texas.  Amarillo.

Dec. 20, 1948.

Rehearing Denied Jan. 24, 1949.

Storey & Donaghey and Tom Davis, all of Vernon, for appellant.

Warlick, Bunnenberg & Douglas, of Vernon, for appellee.

PITTS, Chief Justice.

This appeal is prosecuted from a judgment, after a hearing on the merits, perpetuating a temporary injunction previously granted, restraining appellant, Mrs. Rebecca S. Tennyson, a feme sole, from draining the water accumulating in a natural lake located on her farm land onto the adjacent farm of appellee, Mrs. Maud Green, a feme sole.

Appellant owned 179 acres of land situated in Wilbarger County, Texas, of which 140 acres was planted in alfalfa.  Her said tract of land was almost square in shape. North of appellee's farm and adjacent thereto appellant owned a large tract of land.  Separating the two tracts of land was a community public road.  A short distance north of the boundary line between the two tracts of land and a little west therefrom there was located on appellant's land a shallow natural basin referred to as a lake in which water accumulated, especially during the rainy seasons. A short distance west and a little north of that natural lake, there was a larger and deeper natural lake located on appellant's land.  However, the latter lake was located a short distance north of the boundary line between appellant's land and a tract of land owned by F. L. Moffett, which tract was

west of appellee's land and adjacent thereto. During rainy seasons the two natural lakes sometimes filled up until the water connected them into one body of water that covered fifty or sixty acres. The gradual slope of the land was south from both lakes. When the lakes overflowed, the water from the first lake mentioned ran down the gradual slope south or southeast across the community road onto appellee's farm and she made no complaint about the natural flow of the water. The overflow from the larger lake ran down the gradual slope south across the community road onto the F. L. Moffett tract of land. There was a small drainage or ravine called "Plum Hollow" running from west in an easterly or southeasterly direction across the south part of the land owned by appellee and Moffett. It carried the drainage from the south part of the two tracts of land and some of the overflow from the two lakes reached Plum Hollow during the rainy seasons.

On or about April 27, 1948, the employees and agents of appellant began, under her direction, to cut a ditch connecting the first lake mentioned with the north boundary line of appellee's farm for the purpose of draining the said lake during rainy seasons down an artificial channel a few feet wide and a few inches deep onto the farm land of appellee. Appellee filed her suit alleging such facts together with further allegations that the flowing of the water was being diverted from its natural course onto her farm in a manner that would damage her growing crops and her farm land. As a result of such a plea she temporarily enjoined a completion of the ditch until a further hearing could be had.

A final hearing of the case on its merits was had before a jury which found, in effect, that the ditch as then constructed diverted the natural flow of the surface water from appellant's land onto appellee's land; that the ditch when completed as contemplated by appellant would continue to divert the natural flow of the surface water from appellant's land onto appellee's land; that such a diversion of the surface water onto appellee's land would cause the water to remain there longer and materially damage it; that the construction of the ditch as contemplated would cause the surface water to flow onto appellee's land with greater speed in such a manner as to materially damage it. Upon the jury's findings judgment was entered perpetuating the temporary injunction. The parties agreed by stipulation that, if the temporary injunction should be perpetuated, appellee would likewise be entitled to a mandatory injunction compelling appellant to restore the area embraced by the ditch to substantially the same condition it was before the ditch was dug. As a result of the stipulation and the verdict of the jury, the trial court granted a mandatory injunction compelling a restoration of the premises of that area embraced by the ditch to substantially the same condition it was before the ditch was dug.

Appellant contends first, in effect, that she had a right to dig a ditch to drain the accumulation of surface water from the natural lake located on her farm land so long as the ditch she dug carried the drainage in the same direction that the overflow water drained in its natural course before she dug the ditch. In making such a contention appellant relies on the rules of law presented in the case of Johnson v. McMahon, 118 Tex. 633, 15 S.W.2d 1023, 1025. In that case there is a different factual situation from that found in the instant case. In the case cited a ditch was dug so the water would drain from a natural lake into "Hackberry Draw," a natural drain or channel through which water flowed. In that case the court held that the owner of land had the right "to collect the surface water and the natural drainage of his land into ditches, drains, or artificial streams and discharge it into a natural water course on his own land" without being liable for overflows to those who owned property further down the stream, "provided the discharge is not beyond the natural capacity of the water course." In that case the owner of land turned the surface water from a natural lake located on his land into a natural water course on his land and the parties on the same natural water course below him complained about the overflow. In the case at bar appellant is seeking to drain the overflow from her nat-

ural lake onto appellee's farm where she had growing crops.

It is our opinion that the rules of law stated in the Johnson case do not apply to the facts found in the instant case. It is our opinion further that the rules of law governing the questions here raised by appellant are well stated by the Supreme Court in the case of Bunch v. Thomas, 121 Tex. 225, 49 S.W.2d 421, 423. The court there said:

"It is the settled law of this state that while under the statute quoted the lower estate must receive the surface waters naturally flowing thereon from a higher estate, yet it is not required to receive these waters except in their natural condition, untouched by the hands of man.   *   *   *

"Where the owner of higher lands constructs a ditch to drain the surface water therefrom, which increases the flow of water upon a lower proprietor, or which throws the water upon his land in a manner different from that in which it would have naturally flowed, to the latter's injury, it has been held that the former is liable for the injury thus occasioned, even though the ditch was constructed by him in the course of the ordinary use and improvement of his farm."

Under the record before us in this case and according to the rules of law just cited, it is our opinion that appellant does not have the right to drain the water from her natural lake through an artificial ditch onto appellee's farm and cause damage to her growing crop as well as her land.

Appellant further contends that appellee's land would not be damaged any more by reason of the drainage through the ditch than it had been by the natural flow of the water before the ditch was dug. The jury found that appellant's ditch would divert the flow of surface water onto appellee's land and damage it materially. The jury further found that the digging of the ditch would cause the water to flow onto appellee's land with greater speed than it would have otherwise flowed onto her land and thus damage her land materially by reason thereof.

Mance Phillips testified that he lived near the land in question and had been observing conditions there for thirty-four or thirty-five years. He further testified that the ditch would change the course of some of the water and throw it on appellee's farm; that the overflow would be increased by reason of the ditch which would wash and damage appellee's land; and that water would stand longer on appellee's land and drown out her crops. Several other witnesses, including appellee, corroborated the testimony of Phillips. Several witnesses testified that the additional overflow of the water caused by the ditch would wash appellee's farm, cause the water to stand longer thereon and kill the growing alfalfa on the farm. We think the evidence generally shows that prior to any artificial construction on appellant's land, a part of the surface water which fell on appellant's land passed off with the gradual natural slope of the land in a southerly or southeasterly direction, across the community road, onto appellee's land in a diffused state and without much, if any, injury. But the digging of a ditch to carry the water would concentrate the flow of the water and cause it to reach appellee's land with more force and do more damage. Then there is evidence from several witnesses to the effect that the digging of the ditch diverted water onto appellee's land that ordinarily would run without the ditch from appellant's land onto F. L. Moffett's land. Such witnesses testified further that such diversion of the water and such concentration of the water through an artificial ditch resulted in damage to appellee's farm as well as to her growing crops. The jury weighed this evidence and found such to be true.

We think there is ample evidence to support the findings of the jury. Its findings are therefore binding on the parties as well as on the trial court. Appellant's points to the contrary are overruled and the judgment of the trial court is affirmed.