**C. B. ROBERTSON, Appellant,**

v.

**Mona ROBERTSON, Appellee.**

**No. 6740.**

Court of Civil Appeals of Texas.

Amarillo.

Jan. 27, 1958.

Rehearing Denied Feb. 24, 1958.

See also Tex.Civ.App., 291 S.W.2d 452.

Sanders, Scott, Saunders & Smith, Amarillo, for appellant.

Hamilton & Deaver, Memphis, for appellee.

NORTHCUTT, Justice.

C. B. Robertson, plaintiff in the trial court and appellant here, brought suit against Mona Robertson, defendant in the trial court and appellee here, to recover certain damages caused by defendant's diversion of the natural flow of the surface water, and sought a mandatory injunction to have the defendant to remove a dike or levee constructed by her which plaintiff contended diverted water from its natural flow to the plaintiff's land.

Mrs. Ella Robertson, mother of C. B. Robertson and J. H. Robertson and other children, owned the section of land of which the land here in question is a part. On or about September 1, 1938, Mrs. Ella Robertson divided the section of land between her children. C. B. Robertson received 100 acres described as being the east 80 acres of the SW quarter and the west 20 acres of the SE quarter of the section. Mona Robertson is the surviving wife of J. H. Robertson, deceased, and owns the 240 acres of land being immediately north and northeast of plaintiff's 100 acres. It is immaterial just how Mona Robertson became the owner of all the 240 acres of land and, since the land of the other children is not involved in this suit they will not be mentioned further.

Plaintiff pleaded that shortly before Christmas 1953, Mona Robertson through her agents, servants and employees constructed a dike or levee in the mouth of the natural flow of the surface water on her land about 8 feet high and extended it a distance of approximately 1,400 feet in a southwesterly direction down to the property line of plaintiff and then in a westerly direction along the north property line of the plaintiff for a distance of approximately 250 feet and thereby diverted the natural flow of the surface water onto and across the land of the plaintiff in excessive, unnatural and destructive quantities—and then pleaded certain damages.

Defendant answered and pleaded that when Mrs. Ella Robertson divided the land among her children that each of them had selected the tract conveyed to him; and at such time C. B. Robertson selected the 100 acres described in his petition, and received 20 acres more than his other brothers and sisters, other than Harless Robertson, and then agreed as a part of the consideration for his receiving 100 acres of land, instead of 80 acres as received by the other brothers and sisters, that he would take and receive the surface water without let or hindrance; and plaintiff having so agreed, and having so accepted and appropriated said consideration therefor was estopped to complain the defendant had caused any surface water to flow over said 100 acres in the exact manner as he then and there agreed to take and receive. Defendant then pleaded that continuously for more than twenty-five years prior to September 1, 1938, the date of the partition, the parents of the plaintiff, who owned the land had placed a servitude on plaintiff's land to receive the surface waters from said adjacent and adjoining land, and that said servitude on said plaintiff's land is in use and was reasonably necessary for the fair enjoyment of the other adjacent and adjoining lands on September 1, 1938, when the division was so made; that by reason thereof a grant to the right to continue such use and servitude of plaintiff's said tract arises and exists by implication of law in favor of the owners of such other tracts. The defendant further pleaded she acquired an easement by prescription to use the course now traveled by the surface water over plaintiff's land and had for a period of

more than ten years continuously, publicly and adversely used said course over plaintiff's land and had acquired an easement across said land. The defendant further pleaded certain acts of plaintiff causing his own damages and also unprecedented floods and then pleaded two and four years limitation.

By plaintiff's supplemental petition in reply to defendant's first amended answer he pleaded that the water from the present Mona Robertson tract of land had never run across plaintiff's land; that in 1931 an effort was made by John Robertson, the then owner of the land, to divert a portion of the water across the land now owned by the plaintiff, but that attempt was not successful, and that the water would not naturally run across plaintiff's land and did not run across it. Plaintiff then pleaded alternatively and in response to defendant's plea of prescription and easement, that the surface water had been running in a general course from northeast to southwest across defendant's land continuously and without interruption since prior to 1935; and that by reason of such fact plaintiff had acquired the right and easement to have the water continue in that course and away from plaintiff's land.

This case was submitted to the jury upon Thirty-three Special Issues. Upon the answers given by the jury, the trial court rendered judgment denying the injunction prayed for by C. B. Robertson and denied C. B. Robertson all relief sought by him. From this judgment C. B. Robertson perfected this appeal.

Appellant's first point of error complains of the refusal of the trial court to issue a mandatory injunction requiring the appellee to tear down the levee and restore the ground to the condition it was in immediately prior to the construction of the levee involved. The first question coming to our mind is: If the levee or embankment was not constructed to keep the water from spreading out over appellee's land and to cause all of the overflow of water to stay in a certain place and flow onto appellant's land, what was the necessity of constructing it at all? There is no question but what the levee or embankment was constructed higher than the natural bank of the channel in question. If the water naturally flowed from the appellee's land onto appellant's land there is no question but what appellant had to accept the same. A different situation arises when appellee constructs a levee so as to concentrate all of the water and to cause it to flow upon appellant's land in an unnatural manner. The undisputed evidence shows that by building the levee down to the north line of appellant's land "it would have to dump the water on Charles' land" (emphasis ours). The case of Wilson v. Hagins, Tex.Com.App., 50 S.W.2d 797, by the Supreme Court, seems to be closer to the matters here involved than any case we have read. In that case only three matters were submitted to the jury, namely: 1st, did the defendant divert the natural flow of the water in such a manner as to damage the land of plaintiff by the overflow of said water so diverted. 2nd, then the damages and 3rd, about the future. All three of these issues were answered by the jury favorable to the plaintiff in that case. There the court granted the injunction and gave judgment for the amount of damages. We are of the opinion that the three matters there determined would also determine the matters here involved. We think it is clear that the owner of the upper ground has no right to make excavations, barriers or drains upon his ground by which the flow of surface waters is diverted from its natural channel and a new channel made on the lower ground, nor can he collect into one channel waters usually flowing off onto his neighbor's land by several channels, and thereby increase the flow upon the lower ground. There is no question in this record but what the actions of the appellee in constructing the levee down to the north line of appellant's property accumulated the water and thereby increased the flow upon the land of appellant, and the water was

not received by appellant in the natural way untouched by the hands of man.

In the case of Tennyson v. Green, Tex. Civ.App., 217 S.W.2d 179, 181 (writ refused N.R.E.) it is stated:

"It is our opinion that the rules of law stated in the Johnson case [Johnson v. McMahon, 118 Tex. 633, 15 S.W.2d 1023] do not apply to the facts found in the instant case. It is our opinion further that the rules of law governing the questions here raised by appellant are well stated by the Supreme Court in the case of Bunch v. Thomas, 121 Tex. 225, 49 S.W.2d 421, 423. The court there said:

" 'It is the settled law of this state that while under the statute quoted the lower estate must receive the surface waters naturally flowing thereon from a higher estate, yet it is not required to receive these waters except in their natural condition, untouched by the hands of man. * * *

" 'Where the owner of higher lands constructs a ditch to drain the surface water therefrom, which increases the flow of water upon a lower proprietor, or which throws the water upon his land in a manner different from that in which it would have naturally flowed, to the latter's injury, it has been held that the former is liable for the injury thus occasioned, even though the ditch was constructed by him in the course of the ordinary use and improvement of his farm.' "

We sustain appellant's first point of error.

■ Appellee, over the objections of the appellant, pleaded and introduced evidence that the appellant received 20 additional acres more than the other children burdened with receiving and taking the water from the lands of the appellee adjoining the appellant's land on the north. Appellee contended this was an easement created by implication. If at the time Mrs. Ella Robertson divided the land and the levee or embankment had been where appellee constructed it whereby the water was thrown upon appellant's land then the easement by implication would apply. By the admission of this evidence, the jury must have thought appellant was to receive all of the water from appellee's land regardless of how it was diverted to his land. We think the court erred in permitting such evidence.

Judgment of the trial court is reversed and rendered so far as the mandatory injunction is concerned and the appellee is ordered to tear down and remove the levee and restore the ground to the condition it was in immediately prior to the construction of the levee involved. The judgment of the trial court is reversed and remanded for a new trial as to the amount of damages to the appellant.

Judgment of the trial court reversed and rendered in part and reversed and remanded for a new trial in part.